Filed 6/28/13  P. v. Moen CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054987 |
| v. | (Super.Ct.No. FVI1002274) |
| CHRISTINA MOEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Miriam Ivy Morton, Judge.  Affirmed.

Timothy A. Chandler for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Felicity Senoski and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant Christina Moen appeals from her conviction of child abuse (Pen. Code,[1] § 273d, subd. (a)) following the entry of her plea of guilty. Defendant states the issues on appeal under a number of headings; however, most are variations on her central argument that the documents relied on to establish the factual basis for her plea showed that she was innocent of the crime. We reject that argument in all its variations. Defendant further contends: (1) the hearing on her *Marsden*[2] motion was inadequate to address her concerns about her lawyer; (2) the trial court should have conducted a second *Marsden* hearing when she requested to withdraw her plea; (3) the trial court erred in inquiring of her attorney whether grounds existed for her to withdraw her plea; (4) her request to withdraw her plea was not a violation of the plea agreement; (5) the imposition of additional custody time violated section 1192.7 and the plea agreement; and (6) the trial court should have recused itself from her request to withdraw her plea. We find no merit in those contentions, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

### A. The Sheriff's Report of the Crime[3]

On October 5, 2010, a sheriff's deputy responded to a call for assistance from Child Protective Services. The case worker stated she visited defendant's family and had

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)

[3] The parties stipulated that the sheriff's report provided the factual basis for the guilty plea, and our statement of facts is therefore based on the sheriff's report.

seen bruises on the three-year-old victim, defendant's son. She believed the children were being abused by defendant's boyfriend, Derek Wilkins. Wilkins admitted spanking the three-year-old and causing bruises on him.

The deputy spoke with defendant's mother, Angela Moore, who lived next door. Moore said defendant and Wilkins fought and argued constantly, and Moore believed Wilkins had been beating defendant and defendant's two children. Wilkins had recently been arrested for domestic violence on defendant. Moore often saw bruises on the children after Wilkins had been caring for them. Deputies had been to the house previously to check on things. Two of Moore's other daughters told the deputy they had not seen Wilkins beating defendant or the children, but they often heard him yelling at them, and they had seen bruises on the victim and on defendant.

Wilkins admitted to the deputy that he had spanked the victim that morning for being disobedient. Wilkins had been watching the children for almost a year when defendant was attending school. For discipline, he spanked them on their hands or their buttocks, made them wear a diaper, or stand outside hugging a tree. Wilkins was arrested for a violation of section 273d.

The deputy saw that the victim had a mark on his arm; the victim said Wilkins burned him. The victim said Wilkins hit him because he did not get out of bed, which had also caused the scar the deputy observed under the victim's eye. The deputy saw a six-centimeter bruise in the shape of a wire on the victim's midsection and a large scratch on the victim's chest, but the victim did not have any answers about those injuries.

3

Defendant told the deputy she was not sure what had caused the bruises because Wilkins had been at home with the victim, and the victim had been in bed when she left. She said she usually spanked the children with a belt, and Wilkins used a belt or a shoe horn to hit the children on their hands or buttocks. Defendant avoided the deputy's question about whether she had ever argued with Wilkins about disciplining the children, and she blamed her mother for blowing things out of proportion. Defendant told the deputy she thought the mark on the victim's arm was caused by his touching an iron or a curling iron.

**B. The Complaint**

Defendant and Wilkins were charged by complaint with a single count of violating of section 273d, subdivision (a) as follows: "On or about October 5, 2010, . . . the crime of CORPORAL INJURY TO CHILD . . . was committed by Derrick Darnell Wilkins and Christina Moen, who did willfully and unlawfully inflict cruel and inhuman corporal punishment and injury, resulting in a traumatic condition, upon a child, to wit, [M.Y.]"

**C. Defendant's Arrest and First Court Appearance**

Defendant was arrested and arraigned on October 20, 2010. Counsel was appointed to represent her, and on October 21, she was offered a misdemeanor plea for which she would serve 60 days in jail and would testify against Wilkins. She refused the offer. When the trial court called her case, her counsel stated she wished to make a *Marsden* motion. The trial court conducted a hearing and then denied the motion. The *Marsden* hearing is addressed at more length in the discussion section of this opinion.

4

## D. Entry of Guilty Plea

Following the denial of her *Marsden* motion, defendant remained in custody. On October 28, 2010, she again appeared in court and was offered immediate release and no more custody time in exchange for a plea of guilty to the felony charge. The trial court stated, "[Defendant], my understanding is you're going to plead guilty to Count 1, corporal injury to a child, which carries a maximum 6 years State Prison. . . ." Defendant responded, "Yes, ma'am." The trial court asked defendant how she pleaded to "Count 1, violation of Penal Code 273(d) sub[division] (a), corporal injury to a child," and defendant entered a plea of guilty. As noted, her counsel stipulated that the sheriff's report provided the factual basis for the plea.

## E. First Request to Withdraw Plea

When defendant appeared for pronouncement of judgment on December 9, 2010, her counsel indicated she wished to withdraw her plea. The trial court stated that defendant "will be remanded into custody. She was released on a Cruz Waiver pursuant to a plea bargain agreement, so she's remanded at this time."

The trial court asked counsel whether counsel saw any grounds for withdrawal of plea, and counsel responded that defendant had indicated "she did not understand her rights completely," and that either counsel had misled her or she had "misunderstood— she thought that the one charge somehow was only charged against the co-defendant and not her." The court then inquired of defendant: "[Defendant], you were charged in the same case and the same charge as Mr. Wilkins. You both were charged with the same offense. You're indicating that you didn't understand your legal rights. Can you explain

5

to me what it is that you think you didn't understand that would give you a reason to be allowed to withdraw your plea?" Defendant responded, "I feel like I was rushed when I had questions and stuff. I would get frustrated. Frustration, and everything, and I felt intimidated. And to be honest, I don't think I should have to plead and go through today when she was going through with it to me today. I don't feel like I should have to go through with something that I'm not guilty of." The trial court asked what had changed since defendant had entered her plea of guilty, and defendant replied, "The whole thing. I didn't understand any of it. This is my first time being in trouble. I've never been in trouble in my life. All this legal issues, I don't understand any of it. I don't understand why I was arrested in the first place."

Defendant confirmed, in response to the trial court's questions, that she had talked with her attorney before entering the plea and that her attorney had gone through the plea forms with her. She confirmed she had told the court she was ready to go forward with the plea. The trial court asked, "So it's your position that you should be allowed to withdraw your plea because now you're saying that although you plead [*sic*] guilty, now you're saying you're not guilty and you shouldn't have to go through with it?" Defendant responded "Yes, ma'am." The trial court asked if there was anything else, and defendant responded, "No, that's it." The trial court inquired of defense counsel if she "s[aw] any grounds to file a motion." Defense counsel responded, "No, your Honor." The trial court denied the motion to withdraw the plea. Defendant was placed on probation for three years under various terms and conditions.

6

### F. Second Request to Withdraw Plea

In April 2011, defendant filed a written request to withdraw her plea. In her supporting declaration, defendant stated she had spent the night in jail after her arrest with bail set at $100,000, and she did not meet her public defender until late in the afternoon the next day when they spoke for about five or 10 minutes. The public defender told her of an offer of 60 days in jail in exchange for a plea of guilty to a misdemeanor and her testimony against Wilkins. Defendant declined the offer. She told her public defender she had not committed the crime and asked what would happen. Her public defender told her she would stay in jail until the next court date of October 28, 2010. The public defender did not tell her that her bail could be reduced or that she could be released on her own recognizance and did not show her any paperwork pertaining to the case.

Defendant stated that on October 28, she had discussed her case for about 10 minutes with a man whose name she did not remember,[4] and he asked about the marks on the victim. Defendant said she had explained all the marks. The man repeated the terms of the plea offer, and she again refused to plead guilty to a misdemeanor. She also spoke to her public defender for 10 to 15 minutes.

The trial court held a hearing on the request to withdraw the plea. Defense counsel stated she had told defendant that if defendant withdrew her plea, she would be placed back in custody. Defendant was never taken to jail, and she sat in custody in the

---

[4] Defendant's counsel later stated she had sent an investigator to speak with defendant.

7

courtroom for 20 to 30 minutes.  At the hearing, the prosecutor argued regarding defendant's assertion that the plea bargain had been violated by her being remanded into custody, "as the Court knows, there's a rule or custom throughout this county that says that if someone was in custody, and as part of their plea agreement they were released, that if that person then makes a motion to withdraw a plea, their custody status and all other statuses return back to the status quo ante."

Following the hearing, the trial court denied the request.  Defendant filed a notice of appeal, and the trial court signed a certificate of probable cause.

### III.  DISCUSSION

**A.  Factual Basis for Plea**

The central argument in defendant's appeal is that the documents relied on to establish the factual basis for her plea showed that she was innocent of the crime. Defendant frames her argument variously as her lawyer provided ineffective assistance by failing to inform her that the fact she was not present when the crime was committed was a defense to the crime, and by stipulating to the sheriff's report as a factual basis for her guilty plea when that report contained no evidence of her guilt, and as a result, she did not make a knowing and intelligent waiver of her rights.  She also argues the trial court erred in failing to inquire as to what was the factual basis for the plea.

*1.  Standard of Review*

"[A] trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea.  The trial court's acceptance of the guilty plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be

8

reversed only for abuse of discretion. [Citation.] A finding of error under this standard will qualify as harmless where the contents of the record support a finding of a factual basis for the conditional plea. [Citations.]" (*People v. Holmes* (2004) 32 Cal.4th 432, 443.) Similarly, the withdrawal of a guilty plea before judgment rests in the discretion of the trial court. (*People v. Brown* (2009) 175 Cal.App.4th 1469, 1472.)

*2. Analysis*

"On application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." (§ 1018.) However, defendant may not withdraw her plea merely because she has changed her mind. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 [Fourth Dist., Div. Two].) "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. [Citation.]" (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.)

Section 1192.5 requires the trial court to determine whether there is a factual basis for a guilty plea pursuant to a plea agreement. "[I]n order for a court to accept a conditional plea, it must garner information regarding the factual basis for the plea from either defendant or defense counsel to comply with section 1192.5. If the trial court inquires of the defendant regarding the factual basis, the court may develop the factual

9

basis for the plea on the record through its own examination by having the defendant describe the conduct that gave rise to the charge [citation], or question the defendant regarding the factual basis described in the complaint or written plea agreement. [Citations.]  If the trial court inquires of defense counsel regarding the factual basis, it should request that defense counsel stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement.  [Citation.]  Under either approach, a bare statement by the judge that a factual basis exists, without the above inquiry, is inadequate.  [Citation.]"  (*People v. Holmes*, *supra*, 32 Cal.4th at p. 436.)

The court need not obtain an element-by-element factual basis for the plea, but need only obtain a prima facie factual basis.  (*People v. Marlin* (2004) 124 Cal.App.4th 559, 572 [preliminary hearing transcript provided sufficient factual basis for plea to second degree murder of a fetus and other offenses arising from motor vehicle collision].)  "Section 273d, subdivision (a), felony infliction of physical injury upon a child, provides, 'Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition is guilty of a felony. . . .'  Causing a 'traumatic condition,' means the infliction of 'a wound or other abnormal bodily condition resulting from the application of some external force.  [Citation.]'"  (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980-981.)

In the instant case, the sheriff's report stated that defendant told the deputy "she usually spanks the kids with a belt."  The victim reported that Wilkins had caused a burn

10

mark on his arm and a scar under his left eye. However, the victim did not explain other significant bruises. Defendant's admission to spanking her children with a belt, combined with unexplained bruises on the victim, provided a prima facie factual basis for the crime of felony infliction of physical injury on a child.

Defendant argues that the sheriff's report in fact established her innocence because she was at school when Wilkins abused the victim on October 5, 2010. However, the complaint alleged that defendant committed the crime on or about October 5, and the alleged date is not a material element of the crime. (See, e.g., § 955.) Defendant was required to establish that she did not commit the offense at all rather than that she did not commit the offense on that specific date. Given that the sheriff's report contains prima facie evidence of her guilt of the charged offense, we reject her contention.

Defendant also argues she received ineffective assistance of counsel before entering her plea, asserting that her attorney failed to investigate her case adequately, failed to advise her about the charges, and failed to advise her about a potential alibi defense. To establish a claim of ineffective assistance of counsel in the context of a guilty plea, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that she suffered prejudice, in that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial. (*Hill v. Lockhart* (1985) 474 U.S. 52, 59.)

In *Premo v. Moore* (2011) __ U.S. __ [131 S.Ct. 733, 178 L.Ed.2d 649], the court recognized that "[i]n the case of an early plea [as occurred in the instant case], neither the prosecution nor the defense may know with much certainty what course the case may

11

take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet perceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." (*Premo v. Moore*, *supra*, __ US __, 131 S.Ct. at p. 742.)

Applying those principles to the case before us, we note that defense counsel discussed the sheriff's report with defendant, went over the medical reports with her, and had seen photos of the victim's injuries. Defendant refused to give her counsel a child protective services report. Moreover, counsel met with defendant twice, and counsel's investigator also met with her. Given the early stage of the case, we see no deficiencies in counsel's investigation or preparation. Defendant never told counsel she needed more time, and defendant represented to the court that she had reviewed the plea form with her counsel, she understood it, and she did not need any more time to discuss the case with counsel. Counsel testified that she did not recommend that defendant plead guilty or convince defendant to do so; rather, defendant elected to plead guilty after they discussed her case, including her chances if she went to trial and the plea offer. Defendant benefited from the plea by receiving probation instead of the potential six years in prison, and she obtained an immediate release from custody. If she successfully completes probation, she can request that the charge be reduced to a misdemeanor and expunged under section 1203.4.

We conclude that defendant has failed to establish she received ineffective assistance of counsel.

## B.  Adequacy of Hearing on *Marsden* Motion

Defendant contends the hearing on her *Marsden* motion was inadequate to address her concerns about her lawyer.

### 1.  *Additional Background*

At the *Marsden* hearing, the trial court asked defendant:  "Do you feel that [appointed counsel] has done something to not properly represent you?"  Defendant replied, "I just feel that she's more concerned about what the D.A. wants than actually defending me.  That's all."  She continued, "I want somebody that can stoop down to my level and understand what's going on.  And I feel like I'm just being brushed off."  The trial court responded that it had heard defendant had some paperwork that defense counsel thought might help defendant's case, and defendant would have to waive time so counsel could get the paperwork, review it, and discuss it with defendant.  The trial court asked if counsel had done anything else, and defendant replied, "I'm in a—this is serious.  Like I don't—like you said, anything would be held against me.  So I would rather relieve my documentation to somebody that I know so they can read it."  The trial court asked if defendant knew someone who would be her attorney, and defendant replied, "No, not—no, I'm talking about personally.  Like I would like to relieve it to somebody—a relative, to hold over and look over before I just start turning over.  I don't know what's going on even."  The trial court asked if appointed counsel had done anything defendant felt was inappropriate in representing defendant, and defendant

13

replied, "No. She hasn't done any—I just--" The trial court asked if defendant was requesting to represent herself, and defendant replied that she wanted a new public defender because "I just feel like I'm being brushed off. I'm not getting really the kind of attention that I need." The trial court asked if there was anything else, and defendant replied, "No. That's it."

The trial court then asked defense counsel to summarize her criminal law experience and asked how long defense counsel had been on the case. Defense counsel responded she had been assigned the case that same day. Defense counsel represented that she read the file and talked to defendant and to the investigator who had spoken with defendant. Defense counsel conveyed offers to defendant, but defendant did not want to take the offers. Counsel continued, "so I was going to put her case forward to preliminary hearing but she was telling me that there was paperwork in her property that she thought would be advantageous to her case. I told her that I wanted to get the paperwork; we weren't going to work out a deal and that I would continue her case for a couple weeks so we can do that." Counsel stated she did not believe there was a conflict between her and defendant.

*2. Analysis*

When a defendant complains about the adequacy of appointed counsel, the trial court must permit the defendant to articulate the causes for her dissatisfaction. If any of those causes suggests ineffective assistance of counsel, the trial court must "conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance."

14

(*People v. Eastman* (2007) 146 Cal.App.4th 688, 695, disapproved on another ground in *People v. Sanchez* (2011) 53 Cal.4th 80, 90, fn.3 (*Sanchez*).)

Defendant contends that trial court should specifically have inquired about defendant's claim that her counsel was "working for the prosecution." However, as noted, the trial court asked defendant if she felt counsel had done anything inappropriate in her representation, and defendant responded that she had not. The trial court further asked defendant if there was anything else, and defendant replied there was not. The trial court's open-ended questions provided defendant a sufficient opportunity to state her concerns on the record. (*People v. Eastman*, *supra*, 146 Cal.App.4th at p. 695.) There was no error in the denial of the motion or in the conduct of the hearing.

## C. Trial Court's Inquiry of Defense Counsel

Defendant contends the trial court erred in inquiring of her attorney whether grounds existed for her to withdraw her plea.

Our Supreme Court has endorsed such an inquiry of counsel. In *People v. Smith* (1993) 6 Cal.4th 684, the court noted that "it is difficult for counsel to argue his or her own incompetence." (*Id.* at p. 694.) However, in *Sanchez*, the court explained that in *Smith*, it had "neither suggested it is impossible for counsel to do so nor that a trial court should presume a defendant is requesting substitute counsel without at least some indication that he or she wants to be represented by counsel other than the current appointed attorney." (*Sanchez*, *supra*, 53 Cal.4th at p. 89.) The trial court did not err in asking counsel about potential grounds for withdrawal of the plea.

15

**D. Imposition of Additional Custody Time**

In related contentions, defendant argues her request to withdraw her plea was not a violation of the plea agreement, and the imposition of additional custody time violated section 1192.7 and the plea agreement.

*1. Additional Background*

As recounted above, when defense counsel stated at the sentencing hearing that defendant wished to withdraw her plea, the trial court stated, "We'll discuss whether or not a motion is going to be filed. [Defendant] will be remanded into custody. She was released on a Cruz Waiver pursuant to a plea bargain agreement, so she's remanded at this time."

Defendant was handcuffed and placed in the jury box in the courtroom for the remainder of the hearing, approximately 20 to 30 minutes. After the trial court denied her motion to withdraw her plea, she was again released.

*2. Analysis*

Preliminarily, we agree with defendant's contention that she did not violate the plea agreement merely by moving to withdraw her plea. We therefore turn to whether the trial court violated the plea.

"When a guilty plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement. The punishment may not significantly exceed that which the parties agreed upon." (*People v. Walker* (1991) 54 Cal.3d 1013, overruled on another ground in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) The

16

unfulfilled promise or added punishment must be "a 'significant' variation in the context of the entire plea bargain so as to violate defendant's constitutional rights." (*People v. Arata* (2007) 151 Cal.App.4th 778, 787.)

In *People v. Segura* (2008) 44 Cal.4th 921, the court held that the trial court could not, in the exercise of its authority to modify or revoke probation during the probationary period, modify the jail term prescribed by the plea agreement when the jail term was a material provision of the plea agreement. (*Id.* at p. 925.) In that case, the defendant was granted probation conditioned on serving a year in county jail, and he later sought a reduction in his jail time to 360 days so as to avoid deportation. (*Id.* at p. 929.) The court explained, "[W]hen . . . the parties negotiate a plea agreement that, among other express provisions, grants probation incorporating and conditioned upon the service of a specified jail term, the resulting term of incarceration is not—and may not be treated as—a mere standard condition of probation. Rather, the term of incarceration is in the nature of a condition precedent to, and constitutes a material term of, the parties' agreement. As such, the jail term is not subject to subsequent modification without the consent of *both* parties, and cannot be altered solely on the basis of the trial court's general statutory authority to modify probation during the probationary period." (*Id.* at p. 935, fn. omitted.)

*Segura* is distinguishable in that the defendant in that case sought to reduce his actual jail time. Here, in contrast, defendant was not remanded to jail; rather, she was merely placed in custody in the courtroom for 20 to 30 minutes. We conclude that placing defendant in the jury box, even if handcuffed, for the remainder of the brief

17

hearing was not a significant violation of a material term of the parties' agreement that would entitle defendant to withdraw her plea.

### E. Recusal

Defendant contends the trial court should have recused itself from hearing her second request to withdraw her plea.

#### 1. Additional Background

In connection with her second motion to withdraw her plea, defendant filed a motion for recusal for cause under Code of Civil Procedure section 170.1. The stated grounds for the motion were that the trial court had "prejudged whether [she] could depart from the plea bargain by giving more custody than agreed to, and still not allow the defendant to withdraw her plea," and "when she set an excessive bail for punitive and improper purposes."

In response, the trial court filed an affidavit detailing her contacts with defendant and stating under penalty of perjury that she had no bias or prejudice against defendant. The recusal motion was denied.

#### 2. Analysis

A judge shall be disqualified if a "person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (Code Civ. Proc., § 170.1, subd. (a)(6)(iii).) The denial of a recusal motion under Code of Civil Procedure section 170.1 must be reviewed by writ of mandate rather than on direct appeal. (Code

Civ. Proc., § 170.3, subd. (d).[5]) Defendant failed to seek a writ of mandate, and her claim is not cognizable on appeal to the extent she argues a statutory violation.

Defendant nonetheless has a due process right to an impartial judge, and a claim of a denial of that right is cognizable on appeal despite the exclusive-remedy provision of Code of Civil Procedure section 170.3, subdivision (d).) (*People v. Panah* (2005) 35 Cal.4th 395, 445, fn. 16.) The legal principles applicable to review of a defendant's due process claim are as follows: "[W]hile a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias sufficient. Instead, based on an objective assessment of the circumstances in the particular case, there must exist '"the probability of actual bias on the part of the judge . . . [that] is too high to be constitutionally tolerable."' [Citation.]" (*People v. Freeman* (2010) 47 Cal.4th 993, 996.) Such probability of actual bias "exists only when the circumstances '"would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused."'" (*People v. Cowan* (2010) 50 Cal.4th 401, 457.) "[T]he due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found. [Citation.] Less extreme cases—including those that involve the mere appearance, but not the probability

---

[5] "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d).)

of bias—should be resolved under more expansive disqualification statutes and codes of judicial conduct. [Citation.]" (*People v. Freeman*, *supra*, at p. 1005.)

Here, the judge followed the local practice[6] of returning defendants to their pre-plea custody status if they move to withdraw their plea. Thus, the judge's action did not appear to be an attempt to punish defendant for her motion and did not indicate a probability of bias against defendant. The judge declared under penalty of perjury she was not biased against defendant. We reject defendant's claim of a due process violation.

### F. Need for Second *Marsden* Hearing

Defendant contends the trial court should have conducted a second *Marsden* hearing when she requested to withdraw her plea at the sentencing hearing.

#### 1. Analysis

In *Sanchez,* the court held that "a trial court is obligated to conduct a *Marsden* hearing on whether to discharge counsel for all purposes and appoint new counsel when a criminal defendant indicates after conviction a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' [Citation.]" (*Sanchez*, *supra*, 53 Cal.4th at p. 89.) The court expressly disapproved of the procedure of "the appointment of a substitute or 'conflict' attorney solely to evaluate whether a criminal defendant has a

---

[6] We express no opinion as to the propriety of such local practice.

legal ground on which to move to withdraw the plea on the basis of the current counsel's incompetence." (*Id.* at p. 89.)

Nothing in the record before us, as recounted above in the statement of facts, indicates defendant made any "clear indication" that she wanted a substitute attorney. Thus, the trial court was not required to hold a second *Marsden* hearing.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:

RICHLI

J.

CODRINGTON

J.