Filed 2/4/14  P. v. Lambert CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LAWRENCE OLAN LAMBERT,<br><br>    Defendant and Appellant. | G047913<br><br>(Super. Ct. No. C80413)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Christopher J. Evans, Judge.  Reversed and remanded.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Linh Lam, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Under Penal Code section 1203.4 (all further statutory references are to this code), a defendant who has successfully completed probation may expunge his or her conviction. But in 1997, the Legislature amended the statute to exclude certain sex offenders from its provisions. Seven years before the amendment, defendant Lawrence Olan Lambert pleaded guilty to six counts of lewd and lascivious acts upon a child under 14 years old in violation of section 288 in exchange for three years felony probation after he served one year in jail. In 2012, defendant moved to withdraw his plea under section 1203.4. The court denied his motion. Defendant contends he was denied due process because extrinsic evidence showed the parties understood section 1203.4 relief was part of the plea agreement and even if not, there was an implicit agreement he would be entitled to section 1203.4 relief after he completed his probation. Although the Supreme Court in *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*) recently held the subsequent amendment applied unless "the parties . . . affirmatively agree[d] or implicitly underst[oo]d the consequences of [the] plea will remain fixed despite amendments to the relevant law" (*id*. at p. 71), the trial court never made that determination. We thus reverse the order denying the motion and remand the matter to trial court to conduct an evidentiary hearing on that issue based on "an analysis of the representations made and other circumstances specific to the individual case." (*Ibid*.)

PROCEDURAL BACKGROUND

In 1990, defendant, then 23 years old, pleaded guilty to six counts of lewd and lascivious acts upon a child under the age of 14. On the plea form, defendant acknowledged "it is absolutely necessary all plea agreements, promises of particular sentences or sentence recommendations be completely disclosed to the court on this form" and that no one has "made any promises to [him] except as set out in this form . . . ." Defendant initialed the paragraphs on the plea form indicating he waived his

2

"right to be free from unreasonable searches and seizures" and agreed "for the period during which [he is] on probation . . . to submit [his] person and property, including any residence, premises, container or vehicle under [his] control to search and seizure at any time of the day or night by any law enforcement or probation officer with or without a warrant, and with or without reasonable cause, or reasonable suspicion" and understood he had "the right to reject probation" but "waive[d] and g[a]ve up that right and accept probation on all the terms and conditions contained in Page 3 of this form." Those conditions included suspension of his prison sentence in exchange for three years of supervised probation, payment of a restitution fine, registration under section 290 as a sex offender, avoid being in the presence of minors without an adult present and approval by his probation officer, and have no contact or communication with the victim of the crimes to which he was pleading guilty. Defense counsel confirmed "[n]o promises of a particular sentence or sentence recommendation have been made by [him] or to [his] knowledge by the prosecuting attorney or the court which have not been fully disclosed in this form." Despite the plea form's indication that the grant of probation was one of motivating factors for defendant's plea, it contained no reference to section 1203.4 and there is no transcript of the actual hearing because it has been destroyed.

According to the pre-plea probation report, defendant asserted he committed the crimes due to his "'stupidity'" and lack of understanding, but believed "placing him on probation would be appropriate" because he had attended counseling and believed he had the problem under control and "definitely want[ed] to 'stay out of prison.'" Defense counsel agreed defendant should be placed on probation, stating defendant was "'terrified of jail.'" The district attorney also recommended probation due to defendant's young age and his participation in counseling but that "'a good chunk of jail time'" was appropriate. The probation officer concurred.

3

In November 1990, the court sentenced defendant to a year in jail and three years of supervised probation. Defendant apparently successfully completed these terms, as there is no claim to the contrary.

In 2012, defendant moved to withdraw his guilty plea under section 1203.4. He explained in his declaration he was seeking such relief because he had recently been terminated from his job due to his criminal record and needed employment, without which he was in danger of losing the home he shares with his two minor children and ex-wife. He attested he "believed that if [he] completed probation successfully, [he] would be entitled to request a dismissal under section 1203.4." He asserted he would continue registering as a sex offender under section 290 if his motion were granted.

His trial counsel filed a supporting declaration, stating he did "not have a specific recollection that [he] advised [defendant] of the availability of relief under . . . section 1203.4 at the time of his plea" but "believe[d] . . . it was, and is my custom [and] practice to advise . . . clients [available for eligible for probation] of the relief available under section 1203.4." He "also routinely advised [his] clients that the relief available under section 1203.4 would not be available if one received a state prison sentence and a particular benefit of accepting probation was the opportunity for relief under section[] 1203.4."

At the hearing on the motion, defendant acknowledged he did not remember if section 1203.4 was discussed as part of his plea bargain and that his counsel did not declare he had specifically advised him that section 1203.4 relief would be available if he pleaded guilty. But he argued due process required he receive the benefit of his 1990 bargain because section 1203.4 was an implied promise and the later amendment to the statute excluding certain sex offenses should not apply retroactively. The court denied the motion solely on the ground the amendment to section 1203.4 excluding relief to certain offenders from its provisions applied retroactively under *People v. Ansell* (2001) 25 Cal.4th 868.

4

DISCUSSION

Section 1203.4, subdivision (a) requires a trial court to allow a defendant who has completed all probation terms "to withdraw the plea and have the case dismissed, thus expunging the offense from his or her record." (*Doe*, *supra*, 57 Cal.4th at p. 72.)  It provides, in relevant part:  "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation . . . the defendant *shall*, at any time after the termination of the period of probation . . . be permitted by the court to withdraw his or her plea of guilty . . . and enter a plea of not guilty; . . . and . . . the court *shall* thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted . . . .  The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon.  The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing." (§ 1203.4, subd. (a)(1), italics added.)

Before 1997, section 1203.4 relief was available to sex offenders. (Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004 ed.) foll. § 1203.4, p. 554.)  Thus, because defendant would have completed the terms of his jail sentence and probation at the latest in 1994, he would have automatically been entitled to relief under section 1203.4, subdivision (a), had he filed the motion at that time.  But he did not and in 1997, the Legislature amended the statute to exclude certain sex offenders, including those convicted of violating section 288.  (§ 1203.4, subd. (b); Historical and Statutory Notes, 50D West's Ann. Pen. Code, *supra*, foll. § 1203.4, p. 554; *People v. Arata* (2007) 151 Cal.App.4th 778, 783 (*Arata*).)  The amendment applies retroactively to those convicted and sentenced before its effective date of January 1998.  (*Arata*, at pp. 784-786; *People v. Ansell*, *supra*, 25 Cal.4th at pp. 880-893.)

5

Defendant cites *Swenson v. File* (1970) 3 Cal.3d 389, 394 for the proposition "parties are presumed to have had existing law in mind when they executed their agreement." The Supreme Court recently rejected this argument with regard to plea agreements, holding that "the general rule in California is that the plea agreement will be '"deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy[.]"'" [Citation.] That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Doe*, *supra*, 57 Cal.4th at p. 66.)

In so holding, *Doe* was addressing a question certified to it by the Ninth Circuit Court of Appeals. It distinguished *Swenson*, involving a change in law not intended to apply retroactively, and *People v. Gipson* (2004) 117 Cal.App.4th 1065, which applied a retroactive change in recidivism sentencing despite a plea agreement made by the parties under prior law. (*Doe*, *supra*, 57 Cal.4th at pp. 69-70.) *Doe* followed the rule applied in *Gipson* that '"[w]hen persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.'" (*Doe*, at p. 70.) According to *Doe*, "*Gipson* explains that the parties to a plea agreement — an agreement unquestionably infused with a substantial public interest and subject to the plenary control of the state—are deemed to know and understand that the state, again subject to the limitations imposed by the federal and state Constitutions, may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Ibid*.)

Nevertheless, *Doe* observed that "even though . . . California law does not hold that the law in effect at the time of a plea agreement binds the parties for all time, it is not impossible the parties to a particular plea bargain might affirmatively agree or

6

implicitly understand the consequences of a plea will remain fixed despite amendments to the relevant law.  [Citations.]  [¶] Whether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Doe*, *supra*, 57 Cal.4th at p. 71.)  But a plea agreement's failure "to reference the possibility the law might change [does not] translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction.  To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Id.* at pp. 73-74.)

Thus, we turn to the issue of whether the record shows the parties in this case affirmatively agreed or implicitly understood defendant would be entitled to section 1203.4 relief notwithstanding any amendment.  Constitutional due process requires that "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.'" (*Arata*, *supra*, 151 Cal.App.4th at p. 786.)  Where "denial of section 1203.4 relief would be a 'significant' variation in the context of the entire plea bargain so as to violate a defendant's constitutional rights" (*id.* at p. 787), a defendant may be entitled to specific performance despite subsequent changes in the law that make the promise statutorily unauthorized.  (See *id.* at pp. 782, 786-788 [state must comply with section 1203.4 promise despite subsequent amendment to statute excluding sex offender defendant from statute's coverage]; see also *Doe v. Brown* (2009) 177 Cal.App.4th 408, 414, fn. 7.)

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles.  [Citations.]  'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  [Citation.]  If contractual language is clear and explicit, it governs.  [Citation.]  On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that

the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

We review de novo a trial court's construction of a contract if no extrinsic evidence was admitted or the facts are undisputed (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866), but defer to the trial court where extrinsic evidence creates factual disputes or requires credibility resolutions if reasonably supported by the record (*People v. Paredes* (2008) 160 Cal.App.4th 496, 507). Here, the court never considered the terms of the plea bargain, express or implicit, concluding only that defendant was not entitled to section 1203.4 relief because the amendment excluding certain sex offenders applied retroactively. We thus remand the case to allow the court to conduct an evidentiary hearing and determine whether there was an affirmative agreement or implicit understanding between the parties that the consequences of defendant's plea would remain the same notwithstanding any amendments to the statute. (*Doe*, *supra*, 57 Cal.4th at p. 71.) Given this remand, we need not address defendant's alternative claim that denial of his motion for section 1203.4 relief violates the equal protection clauses of the federal and state Constitutions.

DISPOSITION

The order denying defendant's motion to withdraw his guilty plea under section 1203.4 is reversed and case is remanded for the court to conduct an evidentiary hearing to determine whether "the parties to [the] . . . plea bargain . . . affirmatively agree[d] or implicitly underst[oo]d the consequences of a plea will remain fixed despite

8

amendments to the relevant law" based on "an analysis of the representations made and other circumstances . . . ."  (*Doe*, *supra*, 57 Cal.4th at p. 71.)


                                        RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


IKOLA, J.