[No. C050844. Third Dist. May 30, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LOUIS ARATA, Defendant and Appellant.

**COUNSEL**

Balin & Kotler and Eileen S. Kotler for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stephen G. Herndon and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORRISON, J.**—Defendant appeals from denial of his motion to expunge (Pen. Code, § 1203.4) his conviction for committing a lewd or lascivious act upon a child (Pen. Code, § 288, subd. (a); all further unspecified statutory references are to the Penal Code). He contends it violates due process to apply the provision, enacted after his conviction, that makes relief under section 1203.4 unavailable to one convicted of a violation of section 288 because he entered into the plea agreement in reliance on the relief available under section 1203.4. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, an amended information charged defendant with two counts of lewd or lascivious acts upon a 13-year-old child.

Pursuant to plea negotiations, defendant agreed to plead guilty to count 2, touching the child's buttocks. His counsel stated defendant would enter a plea of guilty "with the understanding that the Court would order a Penal Code section 288.1 report. There would be no State Prison at the outset as a promise. And other than that agreement, it would be up to the Court in a sentencing hearing to decide what happens to my client."

At sentencing, the trial court found defendant was eligible for probation based on the section 288.1 report that concluded defendant was not predisposed to commit a sexual offense, did not pose a danger to others, and incarceration was not in the best interest of the victim. The court placed defendant on probation for five years and dismissed count 1 of the information. Among the conditions of probation was that defendant serve 150 days in jail; execution of sentence was postponed to permit defendant to apply for work furlough.

In 1998, defendant moved for a modification of his probation to permit him to have unsupervised visits with his daughter (who was not his victim). The motion was granted.

In 2005, defendant moved to withdraw his guilty plea and dismiss the charge pursuant to section 1203.4. He claimed he sought to enforce the plea bargain.

In support of the motion, defendant submitted his declaration. Defendant stated he had successfully completed his probation; he reported for work furlough and completed his jail time, paid all fines and fees, and abided by all terms and conditions of probation. He had not been arrested on any charge. In

discussing his plea bargain with his attorney, he was told if he pled guilty to one charge, the other would be dismissed and he would be placed on probation. He was told if he successfully completed probation, he would be able to withdraw his plea and have the case dismissed under section 1203.4. The promised section 1203.4 relief was a motivating factor in his plea, although not the only one.

A declaration from defendant's counsel at the time of the plea negotiations stated it was counsel's habit, custom and practice to inform clients of section 1203.4 relief because expungement was often an important consideration. The advisement of section 1203.4 relief appeared on the probation papers and these would have been discussed with defendant.

Defendant also included two psychological evaluations. The first one stated that defendant "is clearly one of the most responsible defendants I have ever seen." The other, the section 288.1 evaluation, found defendant "deeply remorseful and candid" about his offense. Defendant also provided a letter from his treating psychologist stating that he had been successfully rehabilitated.

The probation department sent a memorandum to the trial court indicating defendant had served his jail time, paid all fines and fees, complied with all terms of his probation, and had no further violations of law. The memorandum further stated that since defendant had been convicted of a section 288 violation, he was not eligible for section 1203.4 relief.

The trial court denied the motion, stating that section 1203.4 relief was the wrong remedy. Section 1203.4 relief was precluded due to defendant's section 288 conviction.

## DISCUSSION

Section 1203.4 provides in part: "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, . . . the defendant shall, at any time after the termination of . . . probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty . . . and enter a plea of not guilty; . . . the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense . . . ." (§ 1203.4, subd. (a).)

■ "On application of a defendant who meets the requirements of section 1203.4 the court not only can but must proceed in accord with that statute. [Citations.]" (*In re Griffin* (1967) 67 Cal.2d 343, 347, fn. 3 [62 Cal.Rptr. 1, 431 P.2d 625].)

■ The granting of probation is not only an act of clemency, but also a bargain made with the probationer. "The purpose and hope are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society. Removal of the blemish of a criminal record is the reward held out through the provisions of Penal Code, section 1203.4, as an additional inducement. The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment." (*People v. Johnson* (1955) 134 Cal.App.2d 140, 143 [285 P.2d 74].)

In 1997, the Legislature amended section 1203.4 to make section 1203.4 relief unavailable to those convicted of certain sex offenses, including a violation of section 288. (§ 1203.4, subd. (b); Stats. 1997, ch. 61, § 1.)

Defendant contends application of the 1997 amendment of section 1203.4 to him violates due process because eliminating section 1203.4 relief attaches a new disability to his conviction in 1996. He relies on *INS v. St. Cyr* (2001) 533 U.S. 289 [150 L.Ed.2d 347, 121 S.Ct. 2271] (*St. Cyr*).

■ In *St. Cyr*, a citizen of Haiti, who had been admitted as a lawful permanent resident of the United States, pled guilty to a drug charge. That conviction made him deportable, although at the time of his plea he was eligible for a waiver of deportation at the discretion of the Attorney General. By the time deportation proceedings were commenced, the law had changed and the Attorney General believed he no longer had discretion to waive deportation in St. Cyr's case. (*St. Cyr, supra*, 533 U.S. at p. 293.) After first determining Congress did not intend the new laws to have retroactive effect, the United States Supreme Court considered whether applying the new laws to St. Cyr would produce an impermissible retroactive effect. (*Id.* at p. 320.) "A statute has retroactive effect when it ' "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . ." ' [Citations.]" (*Id.* at p. 321.) The court found eliminating the discretionary deportation waiver relief "for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly ' "attaches a new disability, in respect to transactions or considerations already past." ' [Citation.]" (*Ibid.*)

In reaching this conclusion, the *St. Cyr* court employed the retroactivity analysis of *Landgraf v. USI Film Products* (1994) 511 U.S. 244 [128 L.Ed.2d 229, 114 S.Ct. 1483]. (*St. Cyr, supra,* 533 U.S. at p. 315 [150 L.Ed.2d at p. 371].) *Landgraf* set forth a two-step analysis: "When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i. e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." (*Landgraf, supra,* at p. 280.) Absent a constitutional restriction on retroactive application, courts will give a statute its intended scope. (*Id.* at p. 267.)

Following the *Landgraf* analysis, we first consider whether the Legislature intended that the amendment to section 1203.4 would apply to those whose convictions were before the date of the amendment. The answer is found in *People v. Ansell* (2001) 25 Cal.4th 868 [108 Cal.Rptr.2d 145, 24 P.3d 1174] (*Ansell*). In *Ansell,* a convicted child molester sought a certificate of rehabilitation under section 4852.01, long after service of his sentence. Effective January 1, 1998, that statute had been amended to make a certificate of rehabilitation unavailable to those convicted of certain sex offenses. On appeal, Ansell claimed the amendment violated the prohibition against ex post facto laws.

The Supreme Court concluded the amendment applied to Ansell based on his 1980 convictions. (*Ansell, supra,* 25 Cal.4th at p. 883.) The amendment stated the certificate of rehabilitation procedure "shall not apply" to "persons convicted of" violation of specified sex offenses. (§ 4852.01, subd. (d).) There was no limitation on the date of the conviction and the Supreme Court declined to rewrite the statute to limit its scope. (*Ansell, supra,* 25 Cal.4th at p. 881.)

Further, the legislative history supported the court's conclusion. (*Ansell, supra,* 25 Cal.4th at p. 881.) The legislative history revealed the Legislature was concerned about the threat the high recidivist rate among sex offenders posed to the public, the difficulty in verifying rehabilitation, and the lack of benefit of the procedure to sex offenders, because few pardons were granted and few would seek a certificate of rehabilitation because registration as a sex

offender was still required. (*Id.* at p. 882.) The Legislature also sought to avoid the " 'waste of public resources' " if sex offenders routinely sought certificates of rehabilitation at public expense. (*Id.* at p. 882.) The court concluded the Legislature must have intended the bar of the amendment to take place as soon as the amendment was effective. (*Id.* at p. 882.) Limiting its application to post-1997 crimes would postpone and frustrate the amendment's aims. (*Id.* at p. 883.)

■ The Supreme Court noted section 3 provides no part of the Penal Code "is retroactive, unless expressly so declared." It assumed that insofar as section 4852.01, subdivision (d) based ineligibility for a certificate of rehabilitation on pre-1998 crimes, the statute operated retroactively within the meaning of section 3. It found no impermissible retroactivity under section 3 because the language and history of amendment provided a clear and compelling implication that the statute was intended to be retroactive. "Although [section 3] speaks in terms of an 'express[]' legislative declaration, case law makes clear that section 3 is satisfied, and 'retroactive' application may be found, where there is ' "a clear and compelling *implication*" ' that the Legislature intended such a result. [Citation.]" (*Ansell, supra*, 25 Cal.4th at p. 883, fn. 21.)

Defendant recognizes the obstacle *Ansell* poses to his argument. He argues we should not follow *Ansell* for several reasons. First, he contends the discussion of retroactivity in *Ansell* was dicta. We disagree. While the parties in *Ansell* assumed the amendment made a certificate of rehabilitation unavailable to persons convicted of sex offenses at any time, the court did not simply accept the assumption, but analyzed the issue. (*Ansell, supra*, 25 Cal.4th at p. 880.) Had it found the Legislature did not intend retroactive application of the amendment to section 4852.01, it would have been unnecessary to discuss the ex post facto claim. Accordingly, the retroactivity analysis was necessary to the decision and not dicta. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, p. 986.)

Second, defendant contends *Ansell, supra*, 25 Cal.4th 868, is distinguishable because it interprets a different statute and a different issue, ex post facto violations. *Ansell* involved the 1997 amendment of section 4852.01; here we consider the 1997 amendment of section 1203.4. Both amendments were contained in Assembly Bill No. 729 (1997–1998 Reg. Sess.); they were the only provisions of the bill. (Stats. 1997, ch. 61.) The amendment to section 4852.01 provided the certificate of rehabilitation procedures "shall not apply" to persons convicted of certain sex offenses. (§ 4852.01, subd. (d).) The amendment to section 1203.4 provides the relief set forth in subdivision (a)

"does not apply" to any of certain sex offenses. (§ 1203.4, subd. (b).) The language of the two statutes is very similar and neither has any date restrictions. The legislative history is identical. We recognize that the issue in *Ansell* was an ex post facto violation and here defendant asserts a due process violation, but the retroactivity analysis is the same in either case.

■ Third, defendant contends *Ansell, supra*, 25 Cal.4th 868, applied the wrong test to determine if the Legislature intended retroactive application of the amendment. He argues the analysis in *Ansell* is contrary to that in *St. Cyr, supra*, 533 U.S. 289 [150 L.Ed.2d 347], and subsequent California Supreme Court cases. We are not at liberty to disregard a decision of the California Supreme Court. The California Supreme Court has determined the Legislature intended Assembly Bill No. 729 (1997–1998 Reg. Sess.) to have retroactive effect, that is, to apply where the relevant convictions occurred before the date of enactment. (*Ansell, supra*, at p. 883.) We are bound to follow the decisions of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

In *St. Cyr, supra*, 533 U.S. 289 [150 L.Ed.2d 347], the court concluded Congress did not intend the statute at issue to have retroactive effect, and so proceeded to the second step of the *Landgraf* analysis to determine if the statute nonetheless had an impermissible retroactive effect. (*St. Cyr, supra*, at p. 320.) Since we conclude the Legislature intended a retroactive effect, we need not proceed to the second step of the *Landgraf* analysis. *St. Cyr* does not aid defendant.

Defendant contends that even an express Legislative intent of retroactive application "will not suffice when such an application would impair constitutional rights." He contends retroactive application of the amendment to section 1203.4 violates his due process rights because it violates his plea bargain. He contends he entered his plea of guilty with the understanding that after successful completion of probation, he would be permitted to withdraw his plea and the court would dismiss the information.

■ It is settled that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495].) The Supreme Court has recognized that due process requirements apply not only to the taking of the plea, but also to implementation of the bargain. (*People v. Mancheno* (1982) 32 Cal.3d 855, 860 [187 Cal.Rptr. 441, 654 P.2d 211] [specific performance of omitted term of plea bargain calling for diagnostic study].) "It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some

remedy." (*Ibid.*) "This does not mean that *any* deviation from the terms of the agreement is constitutionally impermissible." (*People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861], original italics.) Rather, the variance must be " 'significant' in the context of the plea bargain as a whole to violate the defendant's rights." (*Ibid.*; see *Santobello v. New York, supra,* 404 U.S. at p. 262.)

■ We first consider whether section 1203.4 relief was a term of defendant's plea bargain. The Attorney General argues that section 1203.4 relief was not a part of the plea bargain as it was not mentioned. Not all terms of a plea bargain have to be express; plea bargains may contain implied terms. For example, in *People v. Harvey* (1979) 25 Cal.3d 754, at page 758 [159 Cal.Rptr. 696, 602 P.2d 396], the court held where charges were dismissed pursuant to a plea bargain, implicit in such a plea bargain is the understanding that there will be no adverse sentencing consequences based on unrelated dismissed counts. In *People v. Arbuckle* (1978) 22 Cal.3d 749, at pages 756–757 [150 Cal.Rptr. 778, 587 P.2d 220], the court held where a judge accepts a plea bargain and retains sentencing discretion, there is an implied term of the bargain that sentence will be imposed by that judge. Due to the range of dispositions available, the sentencing propensity of a particular judge is "an inherently significant factor in the defendant's decision to enter a guilty plea. [Citations.]" (*Id.* at p. 757.) ■ Section 1203.4 relief is part of the bargain made with a probationer. (*People v. Johnson, supra,* 134 Cal.App.2d 140, 143.) By agreeing to give defendant probation, the plea bargain implicitly included the promise of section 1203.4 relief as part of probation. Section 1203.4 relief was within "defendant's contemplation and knowledge" when he entered his plea. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 86 [51 Cal.Rptr.2d 851, 913 P.2d 1061].)

We next consider whether denial of section 1203.4 relief would be a "significant" variation in the context of the entire plea bargain so as to violate defendant's constitutional rights. (*People v. Walker, supra,* 54 Cal.3d at p. 1024.) In *Walker,* the court found a $5,000 restitution fine was a significant deviation from the negotiated terms of the plea agreement, which had not mentioned any fine. (*Id.* at p. 1029.)

In arguing denial of section 1203.4 relief was a significant variance from his agreement, defendant points to the evidence he offered that he was advised of and relied on the promise of section 1203.4 relief, namely, his declaration and that of his trial counsel.

The Attorney General contends that section 1203.4 does not provide significant relief. (See *People v. Acuna* (2000) 77 Cal.App.4th 1056, 1060 [92 Cal.Rptr.2d 224].) Expungement alone would not relieve defendant of the

duty to register as a sex offender. (§ 290, subd. (a)(1)(F); see § 290.5.) It does not prevent the use of the conviction as a prior conviction in subsequent criminal proceedings or permit defendant to own or possess a firearm. (§ 1203.4, subd. (a).) Defendant would have to disclose the conviction in applying for a state or local agency license or in an application for public office. (*Ibid.*)

We reject this argument. While the "[r]emoval of the blemish of a criminal record" (*People v. Johnson, supra,* 134 Cal.App.2d 140, 143) is not complete, it is still a "reward." (*Ibid.*) At the time of the plea it would have enabled defendant to file a petition for a certificate of rehabilitation at the earliest possible time. (§ 4852.01, subd. (c).) It would also have enabled defendant to "truthfully represent to friends, acquaintances and private sector employers that he has no conviction." (*People v. Acuna, supra,* 77 Cal.App.4th at p. 1060.) We do not question its significance to defendant.

A closer question is whether the promise of section 1203.4 relief was significant in the context of the entire plea bargain. In *People v. Acuna, supra,* 77 Cal.App.4th 1056, the court upheld denying section 1203.4 relief to one who pled guilty to violating section 288 before the amendment to section 1203.4. The court found application of the amendment did not violate the ban on ex post facto laws. The intent of the Legislature in denying the relief was not punishment; it was public safety. (*People v. Acuna, supra,* at p. 1060.) The court also rejected the contention that application of the amended statute to his case denied defendant the benefit of his plea bargain. It found expungement was not an express provision of his plea bargain and the agreement was workable without it. Acuna still received a substantial benefit from the plea bargain by avoiding a prison sentence. (*Id.* at p. 1062.)

In this case we find the implicit promise of section 1203.4 relief was significant in the context of the plea bargain as a whole. It is true that the bargain resulted in the dismissal of one count and avoidance of a prison term. In many cases the importance of these benefits alone will render section 1203.4 relief insignificant. In this case, however, as the court noted at sentencing, it was clear at the outset to the prosecution, the court, the probation department and the doctors that "this was not a state prison case." Thus, the act of clemency in granting probation would be significantly diminished if not accompanied by the eventual reward of section 1203.4 relief.

Since defendant's plea rested in a significant degree on the promise of eventual section 1203.4 relief, such promise must be fulfilled. (*Santobello v. New York, supra,* 404 U.S. 257, 262 [30 L.Ed.2d 427, 433].)

## DISPOSITION

The order denying defendant's section 1203.4 motion is reversed. The matter is remanded to the trial court with directions to grant the motion.

Scotland, P. J., and Blease, J., concurred.